IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


JOSEPH W. BLACKSTONE, M.D., J.D.                          PLAINTIFF


VS.                          CIVIL ACTION NO. 3:07-cv-123-WHB-LRA


MISSISSIPPI DEPARTMENT OF CORRECTIONS,
and WEXFORD HEALTH SOURCES, INC.                          DEFENDANTS


<u>OPINION AND ORDER</u>

This cause is before the Court on the Motion of Defendant, Wexford Health Sources, Inc., for Summary Judgment.  The Court has considered the Motion, Response, Rebuttal, attachments to the pleadings, as well as supporting and opposing authorities, and finds that the Motion is well taken and should be granted.


I.  **Factual Background and Procedural History**

In July of 2003, Plaintiff Dr. Joseph W. Blackstone ("Blackstone"), a Caucasian, was hired by the Mississippi Department of Corrections ("MDOC") as its Director of Medical Compliance.  In this capacity, Blackstone oversaw the performance of the medical staffing companies with which MDOC contracted to provide physicians and other health care services, and worked with the MDOC Commissioner in approving the companies' use of individual physicians at MDOC facilities.  From 2003 to July of 2006,

Correctional Medical Services ("CMS") was the staffing company with which MDOC had contracted to provide medical staffing.

Dr. Kentrall Liddell ("Liddell"), an African American female, was hired by CMS to staff the Central Mississippi Correctional Facility ("CMCF").  In 2004, Blackstone was approached by CMS to discuss whether he was interested in working for the company. About the same time, MDOC had discussions with Liddell about replacing Blackstone.  On September 1, 2004, Blackstone and Liddell exchanged positions.  With the position change, Blackstone worked for CMS as a site medical director and staff physician at CMCF.

A some point, it was decided that CMS would not renew its contract with MDOC as of July 1, 2006.  Thereafter, Defendant Wexford Health Sources, Inc. ("Wexford"), was awarded the contract to provide physicians at MDOC facilities.  On or about May 29, 2006, Blackstone met with Dr. Emil Dameff ("Dameff"), the Regional Medical Director for Wexford, and Dr. Tom Lundquist ("Lundquist"), the Chief Medical Officer for Wexford, to discuss the staff changes that would be made when the contract between MDOC and Wexford went into effect.  Blackstone alleges that during this meeting, he was informed that Wexford was looking for a minority to assume the position of medical director, and that it was not interested in hiring him because he was white.  Blackstone further alleges that the recommendation to hire a minority had been made by MDOC, and Wexford ratified the recommendation.  Lundquist then allegedly asked Blackstone for his opinion as to whether Gloria Perry or

2

Rochelle Walker, two African-American females with whom he worked, were qualified for the medical director position.

According to Wexford, it interviewed Blackstone along with most of the CMS employees who had expressed an interest in working for that company.  According to Wexford, after discussions with MDOC and other individuals, it learned that Blackstone was "not a good fit" at CMCF and, therefore, did not offer to employee him at that facility.  Wexford further claims that Blackstone was aware of the contractual obligation that allowed MDOC to approve the hiring of the medical director for CMCF.

On July 1, 2006, when the contract between CMS and MDOC expired, and because he had not been re-hired by Wexford, Blackstone was no longer employed as the medical director/staff physician at CMCF.  On October 22, 2006, Blackstone filed a Charge of Discrimination with the EEOC against Wexford, alleging that it did not renew his contract because it wanted to replace him with an African-American candidate.  Blackstone was issued a right-to-sue letter from the EEOC on November 30, 2006.

On February 28, 2007, Blackstone filed a lawsuit in this Court against MDOC alleging claims of racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Blackstone also alleged state law claims of intentional and/or negligent infliction of emotional distress.  On March 21, 2007,

Blackstone filed a motion seeking leave to amend his Complaint to add Wexford as a defendant to the lawsuit.  Blackstone's Motion to Amend was granted on March 22, 2007, and his Amended Complaint was filed the same day.  In his Amended Complaint, Blackstone again alleges claims of racial discrimination in violation of Title VII and 42 U.S.C. § 1981, and state law claims of intentional and/or negligent infliction of emotional distress, against both MDOC and Wexford.[1]  Blackstone's claims against MDOC were dismissed pursuant to a Stipulation of Dismissal that was entered on April 13, 2007. Wexford has now moved for summary judgment in this case.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(C).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an

---

[1]  As Blackstone has alleged claims arising under federal law, the Court may properly exercise subject matter jurisdiction in this lawsuit pursuant to 28 U.S.C. § 1331.

element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary

judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Legal Analysis

**A.  Title VII Claims**

Wexford moves for summary judgment on Blackstone's Title VII claim on the grounds that his Amended Complaint, through which it was first named as a defendant in this lawsuit, was not filed within ninety days following his receipt of a right-to-sue letter from the EEOC.  Under Title VII, a plaintiff has "ninety days to file a civil action after receipt of [a right-to-sue letter] from the EEOC." <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 379 (5th Cir. 2002) (citing 42 U.S.C. § 2000e-5(f)(1); <u>Nilsen v. City of Moss Point, Miss.</u>, 674 F.2d 379, 381 (5th Cir. 1982)).  In this Circuit, "the ninety-day limitation period is strictly construed." <u>Id.</u> (citing <u>Ringgold v. National Maint. Corp.</u>, 796 F.2d 769, 770 (5th Cir. 1986); <u>Espinoza v. Missouri Pac. R.R. Co.</u>, 754 F.2d 1247, 1251 (5th Cir. 1985)).  Thus, summary judgment may be granted in cases in which the plaintiff fails to bring suit within ninety days after receipt of a right-to-sue letter. See <u>e.g.</u> <u>Ringgold</u>, 796 F.2d at 770 (affirming summary judgment dismissing Title VII claims on the basis that the lawsuit was filed ninety-two days after the plaintiff received his right-to-sue-letter).

In the case *sub judice*, the record is silent as to the date on which Blackstone received his right-to-sue letter from the EEOC. It is clear, however, that the EEOC mailed the letter on November 30, 2006.  See Resp. [Docket No. 44], Ex C.  Under Fifth Circuit precedent, when the date on which a right-to-sue letter was received is either unknown or disputed, a court may presume "various receipt dates ranging from three to seven days after the letter was mailed."  See Taylor, 296 F.3d at 379.  See also Morgan v. Potter, 489 F.3d 195, 196 (5th Cir. 2007) (finding that "a presumption of receipt [is] appropriate when the actual date of receipt was unknown", and expressing satisfaction with applying a three to five day period for determining the presumptive date of receipt).  Here, the EEOC mailed Blackstone's right-to-sue letter on November 30, 2006.  Applying the above precedent liberally in Blackstone's favor, he presumptively received the letter seven days later, i.e. on December 7, 2007, and was required to file his Complaint ninety days thereafter, i.e. on or before March 7, 2007.

The record shows that Blackstone filed his Complaint against MDOC on February 28, 2007.  Blackstone's suit against Wexford, however, was not filed until he amended his Complaint on March 22, 2007.  As the Amended Complaint was not filed until March 22, 2007, which is more than ninety days after he presumptively received his right-to-sue letter, it is untimely.

Blackstone does not dispute that his Title VII claim against Wexford was not brought within the statutorily prescribed ninety-day period.  Blackstone, however, argues that the Title VII claim he alleges against Wexford in his Amended Complaint is timely because it relates back to his original Complaint, which was filed within the requisite ninety-day period.

Under Rule 15(c) of the Federal Rules of Civil Procedure "a plaintiff [may] amend his pleadings to add a new party if, within the statute of limitations period, the intended (but not originally sued) defendant (1) had received notice of the suit and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it." Rodriguez v. Transnave Inc., 8 F.3d 284, 288 (5th Cir. 1993) (citing Schiavone v. Fortune, 477 U.S. 21, 29 (1986); Barkins v. International Inns, Inc., 825 F.2d 905, 907 (5th Cir. 1987)).  The United States Court of Appeals for the Fifth Circuit has interpreted Rule 15(c) as establishing the following four requirements: "(1) that the claim arose out of the same transaction or conduct described in the original complaint; (2) that the new party received notice in such a way as not to be prejudiced; (3) that the new party knew or 'should have known' that the suit would have been brought against it but for a mistake; and (4) that the second and third requirements were met within the limitations period." Barkins, 825 F.2d at 906-07 (citations omitted).

8

Having reviewed the record in this case, the Court finds the notice provision of the second Rule 15(c) requirement has not been satisfied as Blackstone has not produced any evidence to show that Wexford received notice of the filing of his original Complaint. First, while the evidence shows that Wexford received a copy of the right-to-sue letter issued by the EEOC, there is no evidence that it received notice that Blackstone had filed a civil complaint after receiving that letter. See e.g. St. Cyr v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 540 F. Supp. 889, 892 (D.C. Tex. 1982). Second, there has been no showing of an "identity of interests" between MDOC and Wexford such that the filing of the original Complaint against MDOC provided notice of same to Wexford. See e.g. Jacobson v. Osborne, 133 F.3d 315, 320 (5th Cir. 1998) (explaining that the court will "infer notice if there is an identity of interest between the original defendant and the defendant sought to be added or substituted", and explaining that "[i]dentity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."). Finally, there is no evidence that MDOC and Wexford are/were represented by the same attorneys at any time during proceedings either before the EEOC or this Court. See e.g. Barkins, 825 F.2d at 907 (finding the notice requirement of Rule 15(c) was satisfied in a case in which the

9

original defendant and the defendant named in the amended complaint were represented by the same counsel on the basis that "notice to counsel constitutes notice to a client for Rule 15(c) purposes."). In this case, the record shows that MDOT was represented in this case by Jim Hood, in his capacity as Attorney General for the State of Mississippi, while Wexford is being represented by the law firm of Adams and Reese LLP.  Compare Mot. of MDOC to Dismiss [Docket No. 3], with Answer of Wexford [Docket No. 13].

Based on the evidence before it, the Court finds that Blackstone has failed to show that Wexford knew or should have known that he had filed his original Complaint within the requisite ninety-day period, or that he was mistaken as to the identity of the proper defendant in this case.[2]  Accordingly, the Court finds that Blackstone's Amended Complaint does not relate back to the filing of his original Complaint under Rule 15(c) and, therefore, that the Title VII claim he alleges against Wexford in the Amended Complaint should be dismissed as untimely.  See e.g. Washington v. McComb Hotel Co., 759 F. Supp. 329 (S.D. Miss. 1990) (denying relation back under Rule 15(c) in a case in which there was no evidence that (1) the originally named defendant and the defendant

---

[2]  The Court finds that Blackstone's argument that "he mistakenly named the incorrect defendant in his original complaint" lacks merit in light of the fact that only Wexford was identified as the entity that allegedly discriminated against him in the Charge of Discrimination he filed with the EEOC.  See Resp. [Docket No. 44], Ex. B.

sought to be named in the amended complaint shared counsel, and (2) the defendant sought to be named in the amended complaint had any knowledge of the plaintiff's lawsuit alleging claims arising under Title VII until after the expiration of the ninety-day limitations period); St. Cyr, 540 F. Supp. at 892 (finding an amended complaint did not relate back under Rule 15(c) and, therefore, the plaintiff's Title VII claims were time-barred, in a case in which there was no evidence that the defendant named in the amended complaint had notice of the federal lawsuit within ninety days of the plaintiff's receipt of the right-to-sue letter, and there was no claim that she was mistaken as to the identity of the proper party).

## B.  42 U.S.C. § 1981 Claims

The analyses used when considering claims of discrimination under Title VII and 42 U.S.C. § 1981 are identical.  See Jones v. Robinson Property Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005) (citing Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002)).

> An employee can prove discrimination through direct or circumstantial evidence.  Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994).  If an employee presents credible direct evidence that discriminatory animus at least in part motivated, or was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus.  Brown v. East Miss. Elec. Power Ass'n, 989 F.2d

858, 861 (5th Cir. 1993) (citing <u>Price Waterhouse v.</u>
<u>Hopkins</u>, 490 U.S. 228, 252-53 (1989)).

<u>Jones</u>, 427 F.3d at 992 (alterations in original).

Blackstone's claim under 42 U.S.C. § 1981 is based solely on
direct evidence. <u>See</u> Mem. in Supp. of Resp. [Docket No. 45], at 5.
"Direct evidence is evidence which, if believed, proves the fact
[of intentional discrimination] without inference or presumption."
<u>Portis</u>, 34 F.3d at 328-29 (quoting <u>Brown</u>, 989 F.2d at 861).
"[D]irect evidence includes any statement or written document
showing a discriminatory motive on its face. <u>Id.</u> at 329.

In support of his direct evidence claim, Blackstone declares:

> On or about May 29, 2006, Dr. Emil Dameff, who was
> Wexford's regional medical director, and Dr. Tom Lunquist
> [sic], who was Wexford's national medical director came
> to my office to discuss staff changes when Wexford took
> over the contract for the Mississippi Department of
> Corrections.
>
> During this conversation Dr. Lunquist [sic] informed
> me that Wexford was looking for a minority to take over
> as the medical director, and would not be interested in
> me continuing as the medical director for Wexford.
>
> I asked Dr. Lunquist [sic] if this decision was made
> by Wexford or recommended by the Mississippi Department
> of Corrections.
>
> Dr. Lunquist [sic] responded by stating that the
> Mississippi Department of Corrections had made the
> recommendation to hire only a minority candidate for the
> medical director position, and that Wexford would follow
> its recommendation.

<u>See</u> Resp. [Docket No. 44], Ex. A (Blackstone Decl.), at ¶¶ 3-6.

The Court questions whether the evidence presented by
Blackstone satisfies his burden of producing direct evidence of

12

discrimination.  Specifically, it appears that the racial animus and/or discriminatory motive in this case, if it existed, is attributable to MDOC, which recommended/instructed the hiring of a minority candidate for the medical director position then held by Blackstone.  See id. at ¶ 5.  See also Mot. for Summ. J. [Docket No. 41], Ex. 2 (Blackstone Dep.) at 128-29 (testifying (1) Liddell instructed Wexford to replace him with a minority candidate, (2) MDOC had instructed Wexford to fill his position with an African-American candidate, and (3) Wexford acquiesced to these instructions).  Additionally, to find that Wexford possessed a discriminatory animus based on its acquiesce and/or ratification of the hiring instructions given to it by MDOC would require use of an inference or presumption, i.e. racial animus on the part of Wexford would be inferred or presumed based on its decision to abide by the allegedly racially discriminatory instructions it had been given.  As such, the alleged acquiesce and/or ratification by Wexford would not constitute direct evidence of racial discrimination.  See e.g. Sreeram v. Louisiana State Univ. Med. Ctr.-Shreveport, 188 F.3d 314, 321 (5th Cir. 1999) (defining direct evidence "as evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.").

Assuming, arguendo, that Blackstone has presented credible evidence of direct discrimination, Wexford now has the burden to prove, by a preponderance of the evidence, that it would not have

offered to hire him to the position of medical director at CMCF
regardless of the discriminatory animus.   On this issue, Wexford
has produced Lundquist's affidavit in which he avers:

> During the months leading to the transition between
> the CMS and Wexford contracts, Wexford interviewed most
> of CMS's employees who had expressed an interest in
> working for Wexford. [Blackstone] was among those
> interviewed, and Wexford gave him all due consideration.
> At that time, Dr. Blackstone served as the part-time site
> medical director as the [CMCF].
>
> After conversations and discussions with the MDOC
> and other individuals, Wexford learned that Dr.
> Blackstone was not a good fit as full-time site medical
> director and CMCF (a full-time site medical director was
> required under the new MDOC contract, as opposed to the
> site medical director being a part-time position under
> the old contract with CMS).   This opinion was bolstered
> by conversations and discussions Wexford had with Dr.
> Blackstone in the process of making the hiring decision
> for the full-time medical director position.   In
> addition, the MDOC, though its medical director Dr.
> Kentrell Liddell, explicitly requested that Dr.
> Blackstone not be hired by Wexford as the full-time site
> medical director at CMCF.   Wexford was contractually
> obligated to honor the request of the MDOC not to hire
> Dr. Blackstone since the MDOC had the ultimate authority
> and approval over who would be hired by Wexford to fill
> the full-time site medical director position at CMCF.
> Wexford did not offer to employ Dr. Blackstone as full-
> time site medical director at CMCF for these reasons.
>
> The decision not to hire Dr. Blackstone had
> absolutely nothing to do with race.   In fact, Wexford
> would not have hired Dr. Blackstone regardless of the
> explicit instructions of the MDOC, based on its
> conversations and discussions with the MDOC and others
> (and their past experiences with Dr. Blackstone as part-
> time medical director at CMCF) that revealed Dr.
> Blackstone not to be a good fit to fill the full-time
> site medical director position at CMCF, as well as its
> own discussions with and impression of Dr. Blackstone.

See Mot. for Summ. J. [Docket No. 41], Ex. 5 (Lundquist Aff.), at

¶¶ 5-7.  Based on this evidence, the Court finds that Wexford has satisfied its burden of proof with regard to its claim that it was not influenced by racial factors when making its decision regarding whether to hire (or offer to hire) Blackstone to the medical director position at CMCF.  Specifically, in addition to expressly denying that race was a motivating factor, Wexford has shown that its decision was based on: (1) the fact that under the CMS contract the medical director position at CMCF was a part-time position while under the Wexford contract it was a full-time position, and it determined that Blackstone would not be a good fit in the full-time position; (2) MDOC had specifically requested that it not hire Blackstone as the full-time site medical director at CMCF, and it was contractually obligated to honor this request as MDOC had the ultimate authority as to who Wexford could hire for that position; and (3) it would not have hired Blackstone as the full-time site medical director at CMCF based on its discussions with Blackstone and others, as well as its impressions of him.  Blackstone does not contest this evidence.  Accordingly, the Court finds that Wexford is entitled to summary judgment on Blackstone's claim of racial discrimination under 42 U.S.C. § 1981.  Additionally, as the same analysis is applied to racial discrimination claims under Section 1981 and Title VII, the Court finds that Wexford would have been entitled to summary judgment on Blackstone's claim of racial discrimination under Title VII, had that claim been timely filed.

**C.  State Law Claims**

     Wexford moves for summary judgment on Blackstone's state law claims of intentional and negligent infliction of emotional distress on the basis that they are not supported by the evidence in the record.   Blackstone concedes to the dismissal of these claims.   See Mem. in Supp. of Resp. [Docket No. 45], at 6. Accordingly, the Court finds that Wexford is entitled to summary judgment on these claims.

**IV.  Conclusion**

     For the foregoing reasons:

     IT IS THEREFORE ORDERED that the Motion of Defendant Wexford Health Sources, Inc., for Summary Judgment [Docket No. 41] is hereby granted.   A Final Judgment dismissing Plaintiff's claims against this defendant shall be entered this day.

     IT IS FURTHER ORDERED that the Motions in Limine that have been filed in this case [Docket Nos. 48, 49, 50, 51] are hereby dismissed as moot.

     SO ORDERED this the 10th day of September, 2008.


                              s/ William H. Barbour, Jr.
                              UNITED STATES DISTRICT JUDGE